440 F.2d 121
 In the Matter of SHINAULT LUMBER PRODUCTS, INC.
Fred A. HOERNER, d/b/a Bee-Kay Associates, Petitioner-Appellant,
v.
Andrew C. BAKER, Trustee in Bankruptcy of Shinault Lumber
Products, Inc., Respondent-Appellee.
 No. 30637.
 United States Court of Appeals, Fifth Circuit.
 March 12, 1971.
 
 John B. Clark, Jackson, Miss., for petitioner-appellant.
 Leon L. Porter, Jr., Clarksdale, Miss., John T. Campbell, Memphis, Tenn., for respondent-appellee.
 Before RIVES, THORNBERRY and CLARK, Circuit Judges.
 CLARK, Circuit Judge:
 
 
 1
 The claimant of personal property appeals from the district court's affirmance of an order by the Referee in Bankruptcy which denied a petition to reclaim personal property under an asserted lien established by a pre-bankruptcy contract between the bankrupt corporation and the claimant. Even though the Referee found that the contracting parties intended to enter into a retained title agreement and despite the fact that the executed document contained sufficient operative words to meet State conditional sale contract requirements, the Referee determined that the unrecorded agreement was not valid as against the rights of the trustee. The district court affirmed because the contracting parties occupied the status of borrower and lender rather than vendor and vendee and because the claimant was a corporate insider who not only owned one-half of the stock of the bankrupt but also served it as an officer. We conclude that the district court correctly applied Mississippi law in affirming the Referee's order.
 
 
 2
 The background of the case, the court's findings and its reasoning are succinctly set out in the published opinion of the district court, 323 F.Supp. 1041 (N.D.Miss.1971). It is therefore sufficient for purposes of this opinion to recite only the following abbreviated fact outline.
 
 
 3
 In 1966 the bankrupt corporation, Shinault Lumber Products, Inc., decided to expand into a new manufacturing enterprise. In order to finance the needed equipment, it sought the assistance of the claimant, Fred Hoerner, then an officer and holder of 50% Of the capital stock of bankrupt. Hoerner ordered three large machines, called moulders, for this new business of the bankrupt at a cost of approximately 28,000 dollars. Hoerner paid the seller the price of the moulders, but the machines were shipped directly to bankrupt. In addition, he gave bankrupt a check for sufficient funds to purchase other pieces of smaller equipment. To evidence and secure these transactions, bankrupt signed a printed form of monthly installment note and collateral pledge agreement reciting an indebtedness of 60,000 dollars, containing a detailed description of the personal property covered and this typed-in insert: '* * * title and ownership of the above will be vested in (Hoerner) until paid.'
 
 
 4
 The parties concede, as they must, that Mississippi law controls the determination of the appellate issue. See McKenzie v. Irving Trust Co., 323 U.S. 365, 65 S.Ct. 405, 89 L.Ed. 305 (1945), and B. F. Avery & Sons Co. v. Davis, 226 F.2d 942, 946 (5th Cir. 1955). The instant transaction pre-dated the effective date of Mississippi's adoption of the Uniform Commercial Code,[1] hence the vendor of personal property did not have to record a conditional sale contract to protect his interests against bona fide third-party purchasers. See, e.g., Ketchum and Cummings v. Brennan, 53 Miss. 596 (1876); Pike County v. Frazier, 212 Miss. 516, 54 So.2d 745 (1951). Since the intention of the contracting parties to form a conditional sale contract was established and they used wording which was legally sufficient to create such an agreement, the issue in this appeal really truns upon whether the court correctly looked past the four corners of the document to the status of the parties to decide whether the claimant's contract rights could prime the rights of a 'perfect creditor' such as the trustee in bankruptcy.
 
 
 5
 The determination of this issue is based upon an analysis of two old Mississippi decisions which are the only cases in that State's jurisprudence dealing directly with this issue.
 
 
 6
 The first of these cases is Parker v. Payne, 95 Miss. 375, 48 So. 835 (1909). In Parker, Payne's tenant owned two mules. When he sought credit from Payne, an agreement was made whereby the tenant 'sold' the mules to Payne, who immediately 'reconveyed' the same to tenant, 'retaining' title to the mules as security for the repayment of the loan. Although the entire transaction rested in parol, its content was not questioned by the Court. Subsequent to this contrived sale and retention of title agreement, the tenant borrowed money from Parker and executed a chattel deed of trust to Parker to secure this borrowing. When the tenant defaulted in repaying Parker, a controversy arose between Parker and Payne as to their respective rights in the security. The Mississippi Supreme Court refused to look solely to the contractual agreement between the alleged conditional vendor and conditional vendee. Instead it examined the entire transaction, found that in reality a borrower-lender situation obtained and held that the agreement between the parties did not constitute a valid conditional sales contract, stating, in pertinent part:
 
 
 7
 In order for the seller to enforce his claim, he must be in fact the owner of the property, and make a bona fide sale thereof to a bona fide purchaser, by which sale the actual possession of the property shall be in truth changed.
 
 
 8
 Five years later, in Burkhalter v. Mitchell & McLendon, 107 Miss. 92, 64 So. 967 (1914), Burkhalter borrowed money from Mitchell and McLendon to purchase a mule. He signed a note which contained an almost identical title retention clause to that which appears in the instrument between the claimant and the bankrupt in the case at bar. When Burkhalter defaulted in his payments under the note, Mitchell and McLendon brought an action of replevin to recover possession of the mule from Burkhalter. The court held Mitchell's right to possession to be superior to that of Burkhalter. It distinguished Parker on the ground that it involved a suit between an alleged conditional vendor and an innocent third party, whereas Burkhalter was bound by good faith and good morals to the terms of the written agreement he had executed which clearly agreed Mitchell and McLendon would hold title to the chattel until the indebtedness was paid. The only difficulty in reconciling Parker and Burkhalter and applying their rule to the case at bar arises because of a sentence in the concluding portion of the Burkhalter opinion, which states: 'It is the settled law of this state that contracts of this kind are enforceable even against innocent purchasers for value without notice, where there is a bona fide and actual conditional sale.' From this claimant concludes that Burkhalter held that a fictitious sale and title retention between a borrower and lender was approved where no bad faith intent to thwart third-party rights was present, and argues from this premise that the district judge failed to perceive that Burkhalter had modified Parker. We do not agree. First, for the reason that the statement quoted from Burkhalter is pure dictum. There was no innocent third party involved in the Burkhalter case. Second, the court did not expressly overrule Parker but, rather, distinguished it on the specific ground that as between an innocent third party and an alleged conditional seller, a fictitious sale and retention of title '* * * was at most a mortgage * * *'.
 
 
 9
 Reconciling these cases, we divine the Mississippi rule to be that in a suit between contracting parties the terms of their agreement control. However, when the rights of third parties intervene, then the court will look past the form of the transaction to its substance and if an alleged vendor and vendee are, in reality, a borrower and a lender, then a formally sufficient conditional sale contract will not interdict the rights of innocent third parties.
 
 
 10
 Although Hoerner's status as an insider of the corporate borrower could strengthen the factual analogy between the instant case and Parker, we do not perceive any need to rely on this circumstance so as to impute some possible impropriety or unfair dealing to this relationship in order to uphold the denial of his right to reclaim from the trustee. The mere status of Hoerner and Shinault as lender and borrower is sufficient to cause the rationale of Parker to control. Under Mississippi law, Hoerner cannot rely upon the unrecorded agreement to invest himself with title superior to the intervening rights of the trustee in bankruptcy. The order of the district court affirming the decision of the Referee in Bankruptcy is hereby
 
 
 11
 Affirmed.
 
 
 
 [1]
 The Uniform Commercial Code became effective in Mississippi on March 31, 1968. Miss.Code Ann. 41A:10-101 (Spec. UCC Supp.1967)